SHEPHERD, J.
This appeal is brought by the State of Florida following a dismissal of a criminal prosecution under Fla. R.Crim. P. 3.190(c)(4). We affirm.
Rafael Nunez (“Nunez”) is a businessman accused of perpetrating fraud on five groups of investors by selling them allegedly worthless code enforcement and minimum housing liens from a pool that his company, Collections USA (“Collections”), purchased from the City of Homestead in 1992.[1] The original purchase price of the liens was a heavily discounted $70,000 for liens with a face value of $1,000,000. The City’s duties to Collections at closing and thereafter were minimal, consisting of an obligation to deliver the lien files, execute such documents as were needed to perfect title, and provide technical assistance in the form of a code enforcement officer as backup for Collections to substantiate and corroborate the violation.
By 1994, Collections was experiencing more difficulty than it apparently believed it should in collecting on the liens and contacted the City. During the next two years, the City took some ameliorative actions to assist Nunez who by then had assumed ownership of the company in collecting on some liens,[2] but is claimed to have “dropped the ball” on others. In 1999 Collections sued the City alleging, inter alia, that it had failed to deliver bona fide liens and failed to execute all documents necessary for Collections to collect on them. The Homestead lawsuit reached our court, and we reversed on a statute of limitations issue, thereby allowing the civil suit to continue. See Collections USA, Inc. v. City of Homestead, 816 So.2d 1225 (Fla. 3d DCA2002).
In November 2002, on the heels of the suit against the City of Homestead, the State of Florida by information charged Nunez with first, second and third-degree grand theft, exploitation of the elderly or disabled, and perpetrating a scheme to defraud for knowingly selling allegedly bogus Homestead liens to the investor-victims herein during 1998 and the first half of 1999. In May 2003, Nunez filed a Corrected Sworn Motion to Dismiss under Fla. R.Crim. P. 3.190(c)(4), asserting that the liens he sold to the investors through Collections were valid. In support of his position, Nunez cited the pretrial examination of Homestead City Attorney, Michael Watkins, who testified in the civil action that to the best of his knowledge the liens were valid and properly recorded, and therefore presumably just as collectible by Collections as by the City.
*660 In response, the State filed a Traverse highlighting Nunez 1999 deposition taken in the civil case, wherein Nunez testified generally that he was aware of problems with the Homestead liens as early as 1994. The State wishes to interpret this statement as clear knowledge by Nunez that all of the Homestead liens were invalid as early as 1994. However, all of the Homestead liens could not be worthless since Collections did materialize approximately $200,000 on some of them. In that vein, the State’s Traverse does not make clear what was actually sold to each investor, and whether the lien was worthless or potentially collectible.[3] Similarly, the Traverse fails to articulate in any coherent fashion what representations were made to each investor, and why those statements were misrepresentations.
Our case law is quite clear that Fla. R.Crim. P. 3.190(c)(4) motions to dismiss are treated like summary judgment motions in civil cases. State v. Kalogeropolous, 758 So.2d 110 (Fla.2000). The purpose of such a motion is to test the legal sufficiency of the underlying case, i.e. whether there is a dispute of material fact (not just a dispute of unsupported conelu-sory allegations) or whether there exists a legal defense that would summarily decide the case.[4] State v. Siegel, 778 So.2d 426, 427 (Fla. 5th DCA 2001); Kalogeropolous, 758 So.2d at 111. While, as in civil cases, the State is entitled to the most favorable construction of the evidence with all inferences being resolved against the defendant, this rule presumes that some evidence exists and that the State will provide this evidence in a clear and specific fashion to dispute the material facts posited by the defendant.
In this case, we have studied the States Traverse and we find that it is lacking. First, it is filled with unsupported conclusory allegations. Cf. Hembd v. Dauria, 859 So.2d 1238, 1240 (Fla. 4th DCA 2003) (fraud must not be “flung into [a] ease willy-nilly” by stating “legal conclusions”). Second, the Traverse fails to link the allegedly defective Homestead liens as being one and the same with those which were resold to investors, especially since it is undisputed that Collections realized some profits on the liens it had purchased from Homestead. Cf. Hembd at 1240 (“must clearly and concisely set out the essential facts of the fraud”). Third, the Traverse invites us to make negative conclusions based on the possibility of a signature dispute.[5] Cf. Id. at 1240 (“the law required [the appellant] to demonstrate a prima facie case of fraud, not just nibble at the edges of the concept”). And fourth, it states that some of the liens were double sold without once identifying which ones and to whom and when. Cf. Robertson v. PHF Life Ins. Co., 702 So.2d 555, 556 (Fla. 1st DCA 1997) (“allegations of fraud [were not] pled with specificity [and] ... complaint fails to specifically identify misrepresentations or omissions of fact, the time, place or manner in which they were made, and how the representations were false and misleading”). It is the *661 position of the State that so long as it merely disputes the allegations of a Defendants Sworn Motion to Dismiss, that this (c)(4) motion must be denied. We disagree. A Traverse requires more than a did not, did so swearing match. See generally Kalogeropolous, 758 So.2d at 111 (general denial insufficient). The State is required to specifically dispute the material facts alleged by defendant or add additional material facts that meet the minimal requirements of a prima facie case of guilt. Id.[6]
Here, the State has not alleged fraud with the needed particularity. Just because Nunez may have been aware as early as 1994 that there were problems with some of the liens does not necessarily mean that all of the liens were flawed, or that Nunez knowingly resold a lien upon which he suspected an issue of collectibility. Similarly, just because a lien sold to an investor later becomes uncollectible is insufficient alone to establish a prima facie case of criminal fraud; it merely shows that an arguable contractual expectation was disappointed. As the trial court aptly suggested, the disputes between the investors and Collections here are more suited for resolution in a civil forum based upon the evidence presented. See Rodriguez v. State, 396 So.2d 798, 800 n. 7 (Fla. 3d DCA 1981) (a controversy between businessmen stemming from an honest dispute over funds “seems more appropriately the subject of a civil action than a criminal prosecution” for theft), citing Cooper v. State, 82 Fla. 365, 90 So. 375 (1921).
Affirmed.

. At the time of the purchase Collections USA was owned and operated by Nunez’ brother, Alexander Nunez; Rafael Nunez had other full-time employment. Thus, Rafael was not personally involved in the original purchase.

. As a result of its own efforts and with assistance from the City, Collections realized some $200,000 on the liens excluding the transactions entered into with the investors here.

. In fact, the record indicates that one investor received liens not as part of a sale, but as back-up security collateral for monies he had lent to Collections USA, and that the investor himself actually picked out which liens he wanted as part of his security.

. It is the "defendant’s burden to specifically allege and swear to the undisputed facts in a motion to dismiss and to demonstrate that no prima facie case exists upon the facts set forth in detail in the motion.” Siegel, 778 So.2d at 427. In this case, defendant Nunez has met that burden, but the State has failed to meet its burden in its Traverse.

.The record however shows an equivocating investor who could neither identify nor remember if indeed he had signed a particular investment document at issue here.

. In the civil context, considering the high, particularized threshold to state a claim for fraud, it is ironic that in the criminal context, the State sub judice would attempt to spin a fraud on so little here -where one s liberty as distinguished from one's pocketbook is at stake.